FILED
2012 Aug-29 PM 04:06
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| KAREN GEORGE, | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| v. | } | **Case No.: 1:11-CV-2558-RDP** |
| | } | |
| MICHAEL J. ASTRUE, | } | |
| Commissioner, | } | |
| Social Security Administration, | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OF DECISION

Plaintiff Karen George brings this action, pursuant to Title XVI of Section 1631(c)(3) of the Social Security Act (the "Act"), seeking review of the decision by the Commissioner of the Social Security Administration ("Commissioner") denying her claim for Supplemental Security Income ("SSI"). Based upon the court's review of the record and briefs, the court finds that the decision of the Commissioner is due to be affirmed.

## I.        Proceedings Below

Plaintiff filed her application for SSI on November 12, 2008, in which she alleged disability that began on March 1, 2003. (*Compare* Tr. 9, 90, *with* 122 (listing filing date as December 18, 2008)).[1]  Plaintiff's application was initially denied by the Social Security Administration on March 3, 2009. (Tr. 99-104). On March 14, 2009, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 107-109). The Social Security Administration Office of Disability Adjudication and Review granted

---

[1] Plaintiff also filed an application for SSI on February 8, 2008, but alleged disability that began on March 12, 2002. (Tr. 89, 119). That application was denied on April 18, 2008. (Tr. 91-96).

Plaintiff's request and sent notice of Plaintiff's hearing date on May 6, 2010.  (Tr. 68).

The video hearing was held before ALJ Ivar E. Avots on June 16, 2010.  (Tr. 9, 31).  In

his decision dated December 22, 2010, the ALJ determined that Plaintiff had not been

under a disability within the meaning of § 1614(a)(3)(A) of the Act since November 12,

2008, the date of filing.  (Tr. 9-21).  After the Appeals Council denied Plaintiff's request

for review of the ALJ's decision, that decision became the final decision of the

Commissioner, and therefore a proper subject of this court's appellate review.  (Tr. 1-3).

*See* 42 U.S.C. § 1383(c).

Plaintiff was forty-one years old at the time of the hearing.  (Tr. 34).  She

attended school through the tenth grade.  (Tr. 34).  From 2000 to 2002, Plaintiff was a

cashier, stocker, and store manager at Family Dollar.  (Tr. 156).  Prior to working at

Family Dollar, Plaintiff was a cashier at Ten and Under, a clothing store.  (Tr. 35).

Plaintiff asserts that she has held no other jobs since 1995 and that she has not worked

since 2002.  (Tr. 35-36).  However, Plaintiff's record suggests otherwise.  During a

March 28, 2003 visit to Anniston Medical Clinic, Certified Registered Nurse Practitioner

("CRNP") Karen Thompson recorded that Plaintiff cleaned houses for a living.  (Tr.

269).  In her July 29, 2003 visit to the same clinic, Plaintiff asked to be taken out of

work, which she identified as helping her aunt clean houses.  (Tr. 265-66).  Notes from

Plaintiff's June 29, 2007 visit to her OB-GYN state that Plaintiff had "a job that she [did]

not really like and financial worries."  (Tr. 374).

During the years immediately preceding and following the alleged onset of

disability, Plaintiff sought treatment for a myriad of physical and mental issues, including

(though not limited to): hepatitis B, carpal tunnel syndrome, anxiety, chronic obstructive

2

pulmonary disease, hypertension, abdominal pain, back trouble, neck pain, and shoulder problems (Tr. 475-77).  To say that her medical record is extensive and perplexing would be an understatement.  However, as Plaintiff contests the ALJ's findings only as they relate to her mental impairments, the court will focus primarily on those parts of the record which address her mental state and capabilities.  *See United States v. Valladares*, 544 F.3d 1257, 1267 (11th Cir. 2008) (issues not challenged on appeal are deemed abandoned); *Marek v. Singletary*, 62 F.3d 1295, 1298 no. 2 (11th Cir. 1995) ("Issues not clearly raised in the briefs are considered abandoned.").

Plaintiff's mental state is first noted in the record in documentation about a July 17, 2002 visit with Dr. Louis DiValentin at Anniston Medical Clinic.  (Tr. 271).  At that visit, Dr. DiValentin planned to give Plaintiff permission to return to work after a temporary medical leave, as he felt she was more emotionally stable.  (Tr. 271).  While he described Plaintiff as "very depressed," she "appear[ed] to be doing much better" and appeared "more psychologically stable at [that] time."  (Tr. 271).  Dr. DiValentin also noted Plaintiff smiled that day.  (Tr. 271).  When Plaintiff returned to Dr. DiValentin on February 5, 2003, complaining of dizziness, fatigue, and blurry vision, Dr. DiValentin noted that Plaintiff's "symptoms [were] anxiety driven," and prescribed Diovan HCT, Alprazolam, and Zoloft.  (Tr. 268).  At Plaintiff's follow-up visit on February 11, 2003, Dr. DiValentin told Plaintiff to "take her Zoloft...[and] quit smoking, start eating better and start exercising.  (Tr. 268).

Plaintiff returned to Anniston Medical Clinic on April 7, 2003, complaining of anxiety and depression, stating that her ex-husband was killed that week.  (Tr. 268).  CRNP Thompson noted that Plaintiff was very tearful, and counseled her on grief

management and prescribed Lexapro and Xanax. (Tr. 268). Throughout Plaintiff's medical record, there is evidence of a variety of antidepressant and anti-anxiety medications prescribed to and consumed by Plaintiff. Thus, a June 28, 2007 note by Plaintiff's OB-GYN is puzzling, because it reports Plaintiff "never had any antidepressants before." (Tr. 374). It is unclear whether Plaintiff was dishonest with her doctor or the doctor made an error in the record.

To the extent that Plaintiff honestly reported her prescription drug use, the record seems to reflect that the medications helped improve her mental state. On October 24, 2003, Plaintiff stated that "since she [was prescribed] Zoloft, her depression [had been] better. She [was] sleeping better . . . . She [was] doing better." (Tr. 263). Though Plaintiff sought emergency medical treatment for a panic attack on April 19, 2006, her test results were normal; the emergency room doctor recommended Plaintiff follow up with her regular doctor. (Tr. 356-57). During an August 10, 2007 visit to Anniston OB-GYN Associates, the doctor wrote that after beginning Lexapro, Plaintiff said that "she is about 50% better. She does not get as emotional and she is sleeping better. She still does not always feel good and some day[s] she will feel kind of anxious. Some days she will just not feel like dealing with people at all." (Tr. 373). The doctor counseled Plaintiff that medication alone was "probably not going to be 100% effective in alleviating all of her symptoms. At some point, she may wish to consider some counseling, if her social anxiety continues especially." (Tr. 373).

April 15, 2008 Psychologist Robert G. Summerlin examined Plaintiff for disability, and found her:

4

> to be oriented in regards to person, place, time, and circumstance.  There
> was no evidence of slippage in the areas of attention, concentration or
> memory functioning.   Abstract thinking ability, fund of general
> information, computational skills, and vocabulary were reflective of an
> individual of average intelligence and slightly less than a high school
> education.   Thought processes were logical, coherent, and focused;
> thought content was responsive to questioning.  When asked to describe
> her mood this morning, Ms. George said 'I'm in a depressed mood.' Her
> affect was consistent with her described mood.

(Tr. 389-91).

On October 6, 2008, Dr. DiValentin wrote that Plaintiff had not been on medications for some time.  (Tr. 366).  Plaintiff denied any complaints other than anxiety and depression.  (Tr. 366).  On December 16, 2008, a follow-up visit, Plaintiff's physician talked about exercise, diet, and managing stress properly as ways to change health.  He noted Plaintiff was not very receptive and "feels most of her health problems have been thrown upon her and not caused by her habits."  (Tr. 366).

February 16, 2009, Dr. Robert Summerlin expressed his opinion that Plaintiff did not have a psychological disorder which would cause her to be unemployable.  He did, however, find a rather long list of medical problems which could impinge upon her ability to participate in full-time work activities.  (Tr. 472).  Similarly, during a March 25, 2009 visit to Cleburne Quality Health Care, no unusual anxiety or evidence of depression were reported. (Tr. 544-45).

Plaintiff's attorney eventually referred Plaintiff to seek a psychological evaluation from Dr. Storjohann which took place on June 2, 2010.  Dr. Storjohann's notes indicate Plaintiff reported that she had never received special education, and claimed she is able to manage her own financial affairs without assistance.  (Tr. 562).  Dr. Storjohann's findings conclude that Plaintiff is somewhat intellectually handicapped and unable to

manage her own financial affairs without assistance.  (Tr. 565-68). Plaintiff further reported to Dr. Storjohann that her current psychotropic medications have lessened somewhat the severity of her anxiety and reduced the frequency of her panic attacks.  She stated that her medications have not lessened the severity of her depression (Tr. 564).

## II.    ALJ Decision

SSI is a general public assistance measure that provides an additional resource to the aged, blind, and disabled to ensure that their income does not fall below the poverty line.  Eligibility for SSI is based upon proof of indigence and disability; SSI applicants must prove "disability" within the meaning of the Social Security Act. *See* 42 U.S.C.  §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a). A person is entitled to disability benefits when the person is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

An ALJ must employ a five-step, sequential evaluation process to determine whether a claimant is disabled and entitled to benefits under the Act. *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

The fives steps are: (1) is the claimant presently unemployed; (2) does the claimant have a severe impairment(s); (3) does the claimant's impairment(s) meet or

6

equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart. P, Appendix 1; (4) is the claimant unable to perform his or her former occupation; and (5) is the claimant unable to perform any other work with the economy?   An affirmative answer to any of these questions leads either to the next question, or, on steps three and five, to a finding of disability.   A negative answer to any question, other than step three, leads to a finding of non-disability.   If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step. *McDaniel v. Bowen,* 800 F.2d 1026, 1030 (11th Cir. 1986).

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *McDaniel*, 800 F.2d 1026 at 1238-39.   RFC is what the claimant is still able to do despite his or her impairments, and is based on all relevant medical and other evidence. *Id.* It also can contain both exertional and nonexertional limitations. *Id.* at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform.   *Id.* at 1239.   To do this, the ALJ can either use the Medical Vocational Guidelines or hear testimony from a Vocational Expert ("VE").   *Id.* at 1239-40.

In the instant case, the ALJ first determined that Plaintiff has not engaged in substantial gainful activity since November 12, 2008.  (Tr. 11).  The ALJ addressed the discrepancy between Plaintiff's testimony at the hearing claiming she had not worked since 2002 and notations in the medical record that suggest Plaintiff worked as recently as 2007.  He found that "any work activity after the alleged onset date [did] not rise to the level of substantial gainful activity."  (Tr. 11).

At Step 2, the ALJ found that Plaintiff had the following severe combination of impairments: depression, anxiety disorder, chronic obstructive pulmonary disease, degenerative disc disease of the cervical spine, bilateral carpal tunnel syndrome, lumbar arthritis, status post hiatal hernia repair, antral ulcers, status post rotator cuff tear with shoulder arthroscopy, hepatitis, and a horseshoe kidney.  (Tr. 11).  However, at Step 3, the ALJ reviewed the requirements of listings 1.02 (major dysfunction of a joint), 1.04 (disorders of the spine), and 5.05 (chronic liver disease), and determined Plaintiff's impairments or combination of medical impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926).  (Tr. 14).  The ALJ further found that Plaintiff's mental impairments, singularly or in combination, did not meet or medically equal the criteria of listing 12.04 or 12.06.  (Tr. 14-15).

The ALJ determined Plaintiff had the RFC to perform a range of light work as defined in 20 C.F.R. § 416.967(b), with certain specific limitations.  (Tr. 16).  Plaintiff can never climb ladders, ropes, or scaffolds, and all other postural movements should be limited to occasional.  (Tr. 16).  Plaintiff is limited to frequent reaching, handling, and fingering, bilaterally (Tr. 16), and should avoid exposure to extreme cold and heat, vibrations, fumes such as odors, dust, and gas, poorly ventilated areas, and hazards.  (Tr. 16).  The ALJ further found that Plaintiff retains the capacity to understand and remember simple, but not detailed, instructions, as well as the capacity to sustain attention for routine familiar tasks for extended periods of 2 hours at a time during an 8-hour workday.  (Tr. 16).  She can tolerate ordinary work pressures, but should avoid excessive workloads, rapid changes, multiple commands.  (Tr. 16).  Also, Plaintiff's

contact with coworkers and the public should be casual and non-intensive, and when necessary, feedback should be supportive and changes should be infrequent and well-explained.  (Tr. 16).

## III.   Plaintiff's Argument for Reversal

Generally, Plaintiff avers the Commissioner's decision to deny her claim for SSI benefits was not supported by substantial evidence; more specifically, she argues the ALJ committed an error by "failing to follow the more comprehensive and credible evidence concerning [her] emotional problems."  (Pl. Mem. 2).  Plaintiff contends that the ALJ improperly evaluated the psychological evidence of record, not assigning sufficient weight to Dr. Storjohann's report.  (Pl. Mem. 11).  She offers that the ALJ should have discredited the reports of Dr. Summerlin, in favor of the report by Dr. Storjohann, because only Dr. Storjohann employed psychometric testing.  (Pl. Mem. 11).   Plaintiff asserts that "defendant should not win three reports to one," and that denial of her claim should not be based alone on the number of reports suggesting she is capable of working. (Pl. Mem. 11).

## IV.   Standard of Review

Judicial review of disability claims under the Act is limited to whether the Commissioner's decision is supported by substantial evidence or whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).   The Commissioner's factual findings are conclusive when supported by substantial evidence.  *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  "Substantial evidence is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion."

*Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005); *see also Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).   The standard of substantial evidence is met if a reasonable person would find that the evidence of record is sufficient to support the challenged conclusion.  *Holladay v. Bowen*, 848 F.2d 1206, 1208 (11th Cir. 1988).  "Substantial evidence may even exist contrary to the findings of the ALJ, and [the court] may have taken a different view of it as a factfinder."  *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991).

   If supported by substantial evidence, the Commissioner's factual findings must be affirmed, even if the record preponderates against the Commissioner's findings. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004); *see also Martin*, 894 F.2d at 1529.  The court is required to give deference to factual findings, with close scrutiny to questions of law.  *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991).

## V.    Discussion

   An ALJ cannot reject a physician's report merely because the physician examined the claimant at the request of the claimant's attorney.  *See Mulholland v. Astrue*, Case No. 1:06-CV-2913-AJB, 2008 WL 687326 (N.D. Ga. Mar. 11, 2008) (noting the fact that the claimant went to this psychologist at the request of the claimant's attorney does not by itself impugn this opinion). However, an ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion."  When doing so, the ALJ is "required to state with particularity the weight he gives to different medical opinions and the reasons why."  *McCloud v. Barnhart*, 166 Fed. Appx. 410 (11th Cir. 2006).   For

example, in *Wainwright v. Comm'r of Soc. Sec.*, No. 06-15638, 2007 WL 708971 (11th Cir. Mar 9, 2007), the court held that the ALJ was entitled to reject the examining psychologist's opinion because his "opinion was contrary to the opinions and assessments of the other state agency psychologists who found that Wainwright was only moderately limited in her ability to perform work-related activities." Further, the court held that a physician who was not a treating physician and has examined a claimant only once is "not entitled to any special weight, particularly [when his opinion is] contradicted by the other medical evidence." *Id.*

The opinion of a one-time examiner is not entitled to deference. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). In *Crawford v. Comm'r of Soc. Sec.*, 363 at F.3d 1155 (11th Cir. 2004), the Eleventh Circuit held that the ALJ's decision to discount a consultative psychologist's opinion that the claimant had marked psychological limitations was supported by substantial evidence. The court noted that the psychologist examined the claimant on only one occasion, and the ALJ's findings were supported by the opinion of a psychiatrist who had examined a claimant on two occasions. In *Russell v. Astrue*, 331 Fed. Appx. 678, 681-82 (11th Cir. 2009), the court held that the ALJ had good cause for affording little weight to an examiner's opinion where he appropriately found the claimant's other medical records failed to support the opinion and that the doctor's own examinations contradicted his opinion.

Here, the ALJ explicitly noted that he was affording less weight to Dr. Storjohann's opinion for specifically listed reasons. (Tr. 19). First, portions of the report seem exaggerated. For example, although Plaintiff reports pain to be a 9 on a scale of 1-10 (Tr. 48), Dr. Storjohann's notes confirm that Plaintiff's only pain medication is

Ibuprofen. (Tr. 19, 562). Dr. Storjohann also finds that Plaintiff's alleged pain is consistent with clinical findings, which would not be supported by a treatment regimen of Ibuprofen for pain of Plaintiff's alleged magnitude. (Tr. 572).[2] The ALJ reasoned that Dr. Storjohann's conclusions are not supported by his own findings as to Plaintiff's memory being intact, particularly because she was able to sit through the four-hour examination. (Tr. 19). While this court was unable to confirm the specific four-hour time period of the examination in the record, Plaintiff does not contest this fact. (Tr. 19). Admittedly, Dr. Storjohann's examinations were extensive, and prolonged concentration by Plaintiff during the examinations is not a fact Plaintiff is challenging. *See United States v. Valladares*, 544 F.3d 1257, 1267 (11th Cir. 2008) (issues not challenged on appeal are deemed abandoned); *Doe v. Moore*, 410 F.3d 1337, 1349 no. 10 (11th Cir. 2005) (issues raised without supporting substantive argument are deemed abandoned); *Marek v. Singletary*, 62 F.3d 1295, 1298 no. 2 (11th Cir. 1995) ("Issues not clearly raised in the briefs are considered abandoned."). Therefore, this is evidence supporting the ALJ's decision. (Tr. 19).

Lastly, the Commissioner correctly notes that Plaintiff's IQ of 61 (determined by Dr. Storjohann) is inconsistent with the record–Plaintiff had previously obtained an IQ of 85 in school testing. (Tr. 43, 583). Ultimately, the ALJ weighed the evidence supplied and determined that Dr. Storjohann's opinion that Plaintiff is disabled and cannot work is inconsistent with the observations of the other physicians, State agency consultants, and

---

[2] The court notes that Plaintiff's testimony is wrought with inconsistencies and what appear to be exaggerations. Plaintiff claims she is illiterate (Tr. 43, 562, 566), however her school records suggest this is untrue. (Tr. 577-84). Further, Plaintiff herself listed "reading the newspaper" as one of her hobbies. (Tr. 207). Plaintiff told several doctors that she was born without a uterus and ovaries and has never had menses (Tr. 265-66, 512), yet medical records show Plaintiff seeking treatment for the regulation of her menses. (Tr. 372-78).

Plaintiff's own descriptions of her daily living. (Tr. 19). Pursuant to the standard of review and case law, it was within the ALJ's purview to consider Dr. Storjohann's opinion with less weight, given the ALJ's explanation of why he chose to do so. This was not a quantitative, three-to-one weighing of the record evidence.

**VI.     Conclusion**

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed, and a separate order in accordance with the memorandum of decision will be entered.

**DONE** and **ORDERED** this ___29th_____ day of August, 2012.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE